UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEVADA RESTAURANT SERVICE, INC., d/b/a DOTTY'S, | ) ) ) |
| Plaintiff, | ) Case No.: 2:15-cv-2240-GMN-GWF |
| vs. | ) |
| | ) **ORDER** |
| CITY OF LAS VEGAS, CITY COUNCIL OF LAS VEGAS, | ) ) ) |
| Defendants. | ) ) ) |

Pending before the Court is a Motion for Preliminary Injunction filed by Plaintiff Nevada Restaurant Service, Inc.'s ("Dotty's"), including a Record of related City Council proceedings for the Court's review. (ECF Nos. 15–16). Defendants City of Las Vegas and City Council of Las Vegas (collectively, "Defendants") filed a Response (ECF No. 8), and Dotty's filed a Reply (ECF No. 22).

**I. BACKGROUND**

Dotty's Store #110 received a temporary restricted gaming license from the City of Las Vegas and opened on March 9, 2015. (Mot. Prelim. Inj. 4:22–24, ECF No. 15). Restricted gaming licenses under Las Vegas Municipal Code § 6.40.020 allow for "not more than fifteen slot machines, incidental to the primary business at the establishment." (*Id.* 3:27–4:2). Dotty's temporary restricted gaming license allowed for fifteen gaming machines. (*Id.* 4:22–23).

A temporary license for such establishment becomes permanent by vote of the City Council of Las Vegas, generally through a Consent Agenda. (*Id.* 4:3–6). A permanent license for Dotty's was placed on the April 15, 2015 Consent Agenda for the

City Council. (*Id.* 5:3–5). Prior to the City Council meeting, the item was removed from the Consent Agenda. (*Id.* 5:6–7). The City Council revisited Dotty's license at several further meetings over the next few months, each time holding the permanent license in abeyance, and extending Dotty's temporary license. (*Id.* 5:22–6:21). During this time, from April through September of 2015, the City Council approved by Consent Agenda four other permanent restricted gaming licenses for fifteen gaming machines at establishments allegedly similar to Dotty's. (*Id.* 4:6–19). Subsequently, on November 18, 2015, the City Council passed a motion to issue a permanent restricted gaming license to Dotty's, but the permanent license allowed only seven gaming machines, rather than the fifteen gaming machines allowed in the temporary license and sought by Dotty's. (*Id.* 9:8–10:24). The permanent license was set to take effect on November 26, 2015. (*Id.* 10:23–24).

On November 25, 2016, Dotty's filed an Ex Parte Motion for Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction (ECF No. 2), to which Defendants filed a Response (ECF No. 8). Upon review, the Court found that Dotty's failed to demonstrate irreparable harm, and denied the motion without prejudice, with leave to refile by December 16, 2015. (ECF No. 10). Dotty's timely refiled the instant Motion for Preliminary Injunction. (ECF No. 15).

As in their original Motion for TRO and Preliminary Injunction Dotty's argues that no rational justification was provided by the City Council for the reduction from fifteen to seven gaming machines. Accordingly, Dotty's claims a substantial likelihood of success on its four claims for relief: "(1) petition for writ of mandamus, (2) petition for judicial review, (3) a Constitutional claim of an Equal Protection violation by Defendants, and (4) a claim under 42 U.S.C. section 1983." (Mot. Prelim. Inj. 14:12–15).

In response, Defendants argue that the City Council has "broad discretion to regulate gaming." (Resp. 7:14–15, ECF No. 20).

**II. LEGAL STANDARD**

Preliminary injunctions and temporary restraining orders are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70*, 415 U.S. 423, 439 (1974).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id*. at 24 (internal quotation marks omitted).

Irreparable harm cannot be "economic injury alone . . . because such injury can be remedied by a damage award." *Rent-A-Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). However, the Ninth Circuit has recognized "intangible injuries" as well. *Id.* (indicating "advertising efforts and goodwill" as such injuries in a case regarding a non-compete clause of a contract); *see also Regents of Univ. of Cal. V. Am. Broad. Cos.*, 747 F.2d 511, 519–20 (9th Cir. 1984) (noting in an antitrust case that "ongoing recruitment efforts and goodwill" qualify as irreparable harm).

### III. DISCUSSION

As noted above, the Court previously denied Dotty's Motion for TRO and Preliminary Injunction for failure to sufficiently establish irreparable harm. (*See* Order 4:1–10, ECF No. 10).  Similar to its previous Motion, Dotty's again alleges that it "has been and continues to be seriously damaged; the store may even have to close." (Mot. Prelim. Inj. 19:22–23).  Dotty's further alleges, as before, that this result could harm its "business goodwill and other relationships." (*Id.* 19:26–27).  The only addition to Dotty's argument includes an example of what *could* happen to Dotty's if the store failed, buttressed by a similarly speculative affidavit. (*Id.* 20:4–8); (Aff. of Susan L. Johnson ¶¶ 8–15, Ex. 1 to Mot. Prelim. Inj., ECF No. 15).  Dotty's also insists that "a strict finding of irreparable harm is not even necessary for an injunction," citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). (Mot. Prelim. Inj. 20:11–13).

In *Wild Rockies*, the Ninth Circuit stated: "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that injunction is in the public interest." 632 F.3d at 1135.  Dotty's asks the Court to interpret this statement to mean that if the other preliminary injunction factors favor them, then less irreparable harm is needed. (Mot. Prelim. Inj. 13:7–9).  The Court disagrees.  This statement by the *Wild Rockies* court clearly maintains the requirement of finding a "likelihood of irreparable harm."  Such a reading is consistent with the Supreme Court's previous rejection of the lower "possibility of irreparable harm" standard. *Winter*, 555 U.S. at 22.

Having considered the parties' briefs, declarations, and accompanying exhibits, the Court finds that Dotty's still has not sufficiently established its claim of irreparable

harm. Dotty's allegations remain too vague and speculative in nature, and Dotty's has failed to show that such potential injury cannot be adequately remedied by monetary damages. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 675 (9th Cir. 1988) (finding that, where multiple contingencies must occur before an injury would become a concrete harm, the injury was "too speculative to constitute an irreparable harm justifying injunctive relief."); *see also Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984). For this reason, the Court denies the Preliminary Injunction.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 15) is **DENIED**.

**DATED** this ___8___ day of September, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court