UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|   |   |
|---|---|
| NEVADA RESTAURANT SERVICE, INC., d/b/a DOTTY'S,<br><br>        Plaintiff,<br><br>  vs.<br><br>CITY OF LAS VEGAS, CITY COUNCIL OF LAS VEGAS,<br><br>        Defendants. | Case No.: 2:15-cv-2240-GMN-GWF<br><br>**ORDER** |

Pending before the Court are two Motions for Summary Judgment, one filed by Defendants City of Las Vegas (the "City") and City Council of Las Vegas (the "City Council") (collectively, "Defendants") (ECF No. 27), and the other filed by Plaintiff Nevada Restaurant Service, Inc. d/b/a Dotty's ("Plaintiff") (ECF No. 38). Both motions are fully briefed.

**I.    BACKGROUND**

On March 9, 2015, Plaintiff received a temporary restricted gaming license from the City and opened Dotty's Store #110, located at 10000 West Sahara Avenue, Suite 100, Las Vegas, NV 89117. (Compl. ¶¶ 14–15, ECF No. 1). Restricted gaming licenses under Las Vegas Municipal Code § 6.40.020 allow for "not more than fifteen slot machines, incidental to the primary business at the establishment." (*Id.* ¶ 9). Plaintiff's temporary restricted gaming license allowed for fifteen gaming machines. (*Id.* ¶ 15).

A temporary license for such establishment becomes permanent by vote of the City Council, generally through a Consent Agenda. (*Id.* ¶¶ 15, 17). A permanent license for Plaintiff was placed on the April 15, 2015 Consent Agenda for the City Council. (*Id.* ¶ 17). Prior to the City Council meeting, the item was removed from the Consent Agenda. (*Id.*). The City Council

revisited Plaintiff's license at several further meetings over the next few months, each time holding the permanent license in abeyance, and extending Plaintiff's temporary license. (*Id.* ¶¶ 21–24). During this time, from April through September of 2015, the City Council approved by Consent Agenda four other permanent restricted gaming licenses for fifteen gaming machines at establishments allegedly similar to Plaintiff. (*Id.* ¶ 26). Also during this time, the City Council decided to have its staff conduct a study on restricted gaming license establishments. (*Id.* ¶¶ 27–28, 30). On November 4, 2015, Mary McElhone ("McElhone"), Business License Section Manager for the City, presented her findings "to the [City] Council on data collected form the taverns with Restricted gaming licenses." (*Id.* ¶ 29). Subsequently, on November 18, 2015, the City Council passed a motion to issue a permanent restricted gaming license to Plaintiff, but the permanent license allowed only seven gaming machines, rather than the fifteen gaming machines allowed in the temporary license and sought by Plaintiff. (*See id.* ¶ 49). The permanent license was set to take effect on November 26, 2015. (*Id.*).

On November 25, 2015, Plaintiff filed its Complaint in this Court, including six causes of actions: (1) Petition for Writ of Mandamus, (2) Judicial Review, (3) Equal Protection Violation, (4) Violation of 42 U.S.C. § 1983, (5) Injunctive Relief, and (6) Declaratory Relief. (*See id.* ¶¶ 50–89). Plaintiff asserts that the reduction of its gaming machines from fifteen to seven was arbitrary and capricious, and that it was treated differently than other similarly situated establishments. (*Id.* ¶¶ 40–48).

On the same day, Plaintiff also filed an Ex Parte Motion for Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction (ECF No. 2), to which Defendants filed a Response (ECF No. 8). Upon review, the Court found that Plaintiff failed to demonstrate irreparable harm and denied the motion without prejudice, with leave to refile by December 16, 2015. (ECF No. 10). Plaintiff timely refiled its Motion for Preliminary Injunction. (ECF

No. 15). Once it was fully briefed, the Court reviewed this subsequent Motion and again determined that Plaintiff failed to demonstrate irreparable harm. (ECF No. 36).

Defendants' instant Motion for Summary Judgment argues that their decision to reduce Plaintiff's license from fifteen to seven slot machines was a "rational response to the legitimate governmental concern over the proper use of restricted gaming licenses." (Def. Mot. Summ. J. ("Def. MSJ") 2:24–27, ECF No. 27). Defendants specifically assert this reduction was because "a restricted license allows gaming as an 'incidental' use to the licensee's 'primary business,'" but in Plaintiff's "actual business model, gaming is its primary business, and its operation as a tavern is merely incidental." (*Id.* 2:21–24). Additionally, Defendants contend that "[t]he Record makes plain that City Defendants' decision to approve Plaintiffs restricted gaming license for seven slot machines is supported by substantial evidence." (*Id.* 3:4–6).

In Plaintiff's instant Motion for Summary Judge, it argues that the "undisputed facts indicate that . . . the City's actions were arbitrary and capricious as a matter of law." (Pl. Mot. Summ. J. ("Pl. MSJ") 14:19–21, ECF No. 38). Further, Plaintiff contends that "Defendants violated the Constitution's guarantee of equal protection by explicitly and repeatedly applying the law differently to [Plaintiff] than to similarly situation [sic] applicants for restricted gaming licenses." (*Id.* 19:15–16).

II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if

reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). Then, "the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.* In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

1 | *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid
2 | summary judgment by relying solely on conclusory allegations that are unsupported by factual
3 | data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go
4 | beyond the assertions and allegations of the pleadings and set forth specific facts by producing
5 | competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.
6 |      At summary judgment, a court's function is not to weigh the evidence and determine the
7 | truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.
8 | The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn
9 | in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is
10 | not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

The Court will first address Plaintiff's federal law claims, then the state law claims.

### A.  Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause requires the government to treat all similarly situated persons alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (citing *Sullivan v. Stroop*, 496 U.S. 478, 485 (1990)); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002).  Disparate government treatment will survive rational basis scrutiny "as long as it bears a rational relation to a legitimate state interest." *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir. 1996).  In order to state a claim for an equal protection

violation, a plaintiff must plead facts that, if true, would show that the governing body acted irrationally and in a manner "unrelated to the achievement of any combination of legitimate purposes." *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

In their Complaint, Plaintiff alleges that "the application of the Ordinance . . . divides up tavern licensees into two classes: taverns run by Plaintiff, and all other taverns seeking a permanent restricted gaming license for 15 gaming machines." (Compl. ¶ 62). As alleged, "[t]his classification and disparate treatment" violate the Equal Protection Clause "because there is no rational relationship between the disparity of this treatment and any legitimate governmental purpose." (*Id.* ¶ 63).

Defendants argue that they are entitled to summary judgment on this claim because "Plaintiff cannot demonstrate that City Defendants lack any rational basis for limiting [Plaintiff] to seven slot machines, instead of fifteen." (Def. MSJ 9:6–8). Further, Defendants assert that "the Record shows that City Defendants' decision was rationally related to its legitimate interest in ensuring the proper use of a permanent restricted gaming license." (*Id.* 9:8–10).

Here, Plaintiff is not part of a protected class, and therefore, rational basis review applies. The Ninth Circuit has already held in a related case that the government's interest in ensuring gambling permitted by license remains merely incidental to a licensee's primary business purpose is a rational legislative purpose. *Nevada Restaurant Services, Inc. v. Clark County*, 638 F. App'x 590, 593 (9th Cir. 2016). The Court agrees that Defendants' same rational basis here is sufficient to justify its decision and prevent a violation of the Equal Protection Clause. Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's general equal protection claim.

### B. "Class-of-One" Equal Protection

Plaintiff also argues that Defendants violated its equal protection rights under the "class-of-once" analysis. When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a "class of one" claim. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). In order to claim a violation of equal protection in a class-of-one case, the plaintiff must establish that the defendants: "(1) intentionally (2) treated [Plaintiff] differently than other[s] similarly situated, (3) without a rational basis." *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing *Willowbrook*, 528 U.S. at 564; *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)). Although the plaintiff must show that the defendants' decision was intentional, it need not show that the defendants were motivated by subjective ill will. *Willowbrook*, 528 U.S. at 565 (rejecting the interpretation that a plaintiff must allege that the governmental action was the result of subjective ill will in a "class of one" claim). A class of one plaintiff must show that the discriminatory treatment "was intentionally directed just at him, as opposed . . . to being an accident or a random act." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). When "a legislative action of general applicability that applies to hundreds of taverns," it "does not single out Plaintiffs for regulation, Plaintiffs' 'class of one' argument fails." *Nevada Rest. Servs., Inc. v. Clark Cty.*, 638 F. App'x 590, 593 (9th Cir. 2016) (citing *Willowbrook*, 528 U.S. at 564).

Defendants argue that Plaintiff's class-of-one claim fails because "(1) Plaintiff has not identified any similarly situated business that was treated differently; and (2) even if a similarly situated business were identified, Plaintiff cannot set forth any admissible facts showing that City Defendants' decision was irrational and a pretext for an improper motive." (Def. MSJ 12:12–14).

In Plaintiff's Motion for Summary Judgment,[1] it argues that it "was denied its full 15 machines while four other similarly situated licensees received them with unanimous votes from the City Council." (Pl. MSJ 20:19–21, ECF No. 38). Defendants commissioned a study by their staff, and McElhone presented the findings, which included that "for the purposes of gaming revenue, [Plaintiff] 'fle]ll in line' with other taverns in the City." (*Id.* 20:24–25) (citing Record for Review "ROR" 624, ECF No. 16). Plaintiff argues that this means "statistically speaking, it was similarly situated." (*Id.* 10:26). Plaintiff further contends that no rational basis existed for limiting Plaintiff specifically, but rather, the basis was lobbying by Plaintiff's competitor, Station Casinos. (*Id.* 21:2–5).

Defendants respond that their "decision to allow [Plaintiff] seven slot machines . . . was rationally related to their legitimate interest in ensuring the proper use of the City's permanent restricted gaming licenses." (Def. Resp. to Pl. MSJ 13:3–5, ECF No. 46). Defendants further contend that "Plaintiff has not offered admissible evidence that shows any of the other four restricted-gaming applicants was similarly situated to Plaintiff in every materially relevant respect." (*Id.* 13:22–24). Defendants define "all materially relevant respects" as "revenues, location, and timing of licensure application." (*Id.* 14:10–12). Defendants explain that Plaintiff was applying for its "initial permanent restricted gaming license," as opposed to the other "existing taverns" that "already had permanent restricted gaming licenses." (*Id.* 14:12–14). This is particularly important, according to Defendants, because Defendants could begin with Plaintiff in their effort to ensure "the proper use of permanent restricted gaming licenses," and these efforts "did not need to carry over to the seventy-five pre-existing taverns with gaming

---

[1] The Court will reference Plaintiff's Motion for Summary Judgment rather than its response to Defendants' Motion for Summary Judgment because Plaintiff's response indicates its belief that "[s]ummary judgment is premature at this time because the parties are still in the middle of discovery." (Pl. Resp. to Def. MSJ 12:5–6, ECF No. 30). As such, the Court finds it appropriate to focus on Plaintiff's motion rather than its earlier response.

revenue over fifty percent of total revenue, but could be done 'step by step.'" (*Id.* 14:14–18) (citing *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466 (1981)).

Plaintiff concedes that it had a "new location as opposed to an existing location that was undergoing a change in ownership" (Pl. Reply to MSJ 8:19–20, ECF No. 47); however, it asserts that "McElhone testified that applicants for new locations and applicants for existing locations were treated as the same for the purposes of the City Council's licensing decisions." (*Id.* 8:21–23); (McElhone Dep. 151:17–152:4, Ex. 9 to Pl. MSJ, ECF No. 39-9).

The Court finds that a genuine issue of material fact exists as to whether any of the four taverns that obtained licenses while Plaintiff's was held in abeyance are similarly situated to Plaintiff. Although Defendants urge the Court to find that Plaintiff is different because it applied for a new license rather than an existing license, Defendants have failed to demonstrate why this fact is material to Court's determination. Defendants do not indicate any difference between new and existing locations regarding the licensing process, and Plaintiff provided testimony that none exists. Nevertheless, neither has Plaintiff sufficiently carried its burden to demonstrate that any of these other four taverns were similarly situated. Plaintiff provides an explanation of the City staff's study, which culminated in a presentation to Defendants. However, Plaintiff does not provide a copy of that study, report, or presentation for the Court's review. The Court finds that McElhone's statement that "for the purposes of gaming revenue, [Plaintiff] 'fle]ll in line' with other taverns in the City" (ROR 624) is not sufficient to carry Plaintiff's burden of demonstrating that these other taverns were similarly situated. However, the Court does find this statement to be sufficient to demonstrate a genuine issue of material fact regarding the existence of similarly situated taverns.

Additionally, the Court agrees that if the other taverns were similarly situated to Plaintiff, then Defendant's legitimate interest in ensuring the proper use of the City's permanent restricted gaming licenses is insufficient to demonstrate a rational basis. While the

City has a legitimate interest in regulating gaming, such a rational basis does not extend to intentionally singling out one individual location, when others similarly situated are receiving different treatment.

Accordingly, the Court denies both Motions for Summary Judgment as to Plaintiff's "class-of-one" equal protection claim.[2]

### C. Remaining State Law Claims

Plaintiff's remaining claims for a Writ of Mandamus and Petition for Judicial Review are pled in the alternative. (*See* Pl. MSJ 17:24–26) ("Even if the Court does not believe mandamus relief is called for, the facts of this case warrant judicial review of the City's decision regarding the restricted gaming license of [Plaintiff]."). However, the Court finds that both of these claims are related to the fact issue remaining in this case. Both claims require a finding of "substantial evidence." *See Tighe v. Von Goerken*, 833 P.2d 1135, 1136 (Nev. 1992); *City of Las Vegas v. Laughlin*, 893 P.2d 383, 384 (Nev. 1995). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *State Emp. Security v. Hilton Hotels*, 729 P.2d 497, 498 (Nev. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)) (internal quotation marks omitted). Whether Defendants' decision is supported by substantial evidence is dependent upon the finding of whether Plaintiff was treated differently than similarly situated taverns. Accordingly, the Court denies both Motions for Summary Judgment as to these two claims as well.

---

[2] Although Plaintiff alleges a separate equal protection claim under § 1983, the Court finds that the analysis for these two claims are the same. Indeed, while Plaintiff's Motion for Summary Judgment has a short section devoted to its § 1983 claim, it does not provide any separate analysis, but rather, Plaintiff appears to assert this claim in the alternative to its Writ of Mandamus claim to obtain injunctive and declaratory relief: "Apart from damages, and in the event a writ of mandamus is not granted by this Court, a finding of liability [under § 1983] also entitles [Plaintiff] to both injunctive and declaratory relief." (Pl. MSJ 22:23–24). Such a distinction is not yet applicable, as the Court has found that a genuine issue of fact still remains.

IV. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 27) is **GRANTED in part, DENIED in part**.  The Court dismisses Plaintiff's general equal protection claim.  All other claims, including Plaintiff's class-of-one equal protection claim, remain.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 38) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall file their Joint Pretrial Order by April 21, 2017.

**DATED** this   31    day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court