# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

NEVADA RESTAURANT SERVICES, INC., d/b/a DOTTY'S,

Plaintiff,

vs.

THE CITY OF LAS VEGAS, a Municipal Corporation; THE CITY COUNCIL OF LAS VEGAS,

Defendants.

Case No.: 2:15-cv-02240-GMN-GWF

**ORDER**

Pending before the Court is Plaintiff Nevada Restaurant Services, Inc.'s ("Plaintiff's") Motion to Supplement the Record, (ECF No. 83). Defendants City of Las Vegas and City Council of Las Vegas, (collectively "Defendants"), filed a Response, (ECF No. 93), and Plaintiff filed a Reply, (ECF No. 98). Plaintiff also filed a Supplemental Brief, (ECF No. 128).

Also pending before the Court is the Court's judgment on Plaintiff's claims for judicial review and petition for writ of mandamus. Plaintiff filed a Trial Brief, (ECF No. 120), as did Defendants, (ECF No. 113).

## I. BACKGROUND

On March 9, 2015, Plaintiff opened Dotty's Store #110, located at 10000 West Sahara Avenue, Suite 100, Las Vegas, NV 89117, with a temporary restricted gaming license from the City of Las Vegas for fifteen gaming machines. (Compl. ¶¶ 14–15, ECF No. 1); (Admin Rec. at 2, ECF No. 16-15).[1] Dotty's Store #110 also held approval for a fifteen-machine tavern gaming license from the Nevada Gaming Control Board and Nevada Gaming Commission,

---

[1] Las Vegas Municipal Code § 6.40.020 allows for "not more than fifteen slot machines, incidental to the primary business at the establishment." (*See* Defs.' Trial Brief 3:25–4:1, ECF No. 113).

alongside a restaurant and alcoholic beverage license from the City of Las Vegas. (Pl.'s Trial Brief, ECF No. 7).

On April 15, 2015, Plaintiff's application to convert Store #110's temporary restricted gaming license into a permanent restricted gaming license was placed on a Consent Agenda for the City Council of Las Vegas ("City Council"), and set for an April 15, 2015 hearing, wherein the City Council could approve or deny Plaintiff's application. (Pl.'s Trial Br. at 8, ECF No. 120). At that City Council meeting, however, Plaintiff's license was removed from the Consent Agenda and set for another hearing on May 20, 2015. (*Id.*); (Admin. Rec. at 1, ECF No. 16-1). At the May 20, 2015 hearing, the City Council abeyed their decision on Plaintiff's gaming license until June 17, 2015. (Admin. Rec. at 25–33, ECF No. 16-4). On June 17, 2015, the City Council again abeyed their decision on Plaintiff's license until July 1, 2015. (Admin. Rec. at 1, ECF No. 16-15).

During the July 1, 2015 hearing, the City Council discussed Plaintiff's license application alongside concerns about the amount of revenue that taverns such as Plaintiff received from gaming, since Las Vegas Municipal Code 6.40.020 only allowed a permanent restricted gaming license when gaming was "incidental to" a primary business. (Admin. Rec. at 2–11, ECF No. 16-7). Ultimately, the City Council decided to abey their decision on Plaintiff's license for another 180 days; and the City Council instructed their staff to conduct a study on the amount of gaming revenue received by taverns licensed for a permanent restricted gaming license. (Admin. Rec. at 1, 11, ECF No. 16-7); (*Id.* at 77, ECF No. 16-13).

On November 4, 2015, Mary McElhone ("McElhone"), Business License Section Manager for the City, presented her findings to the City Council on data collected from taverns with restricted gaming licenses. (*See generally* Admin. Rec., ECF No. 16-15); (Defs. Trial Brief 6:7–14, ECF No. 113); (Pl.'s Trial Brief at 13:1–6, ECF No. 120). That same day, as a separate agenda item, Plaintiff's application came before the City Council. The City Council

voted to grant Plaintiff's application for a permanent restricted gaming license, but only for seven gaming machines. (Admin. Rec. at 45–56, ECF No. 16-15). The motion for seven machines passed, but the City Council soon after reconsidered that decision and set a rehearing date of November 18, 2015. (*Id.* at 60–61).

On November 18, 2015, the City Council again voted on Plaintiff's permanent restricted gaming license, beginning with a motion for fifteen gaming machines. (Admin. Rec. at 5, ECF No. 16-17). The motion for fifteen machines failed; but the City Council moved to grant Plaintiff's license for seven gaming machines, which passed with five votes to two. (*Id.* at 6–9). Mayor Carolyn G. Goodman and Steven D. Ross voted against the decision; whereas Council Members Bob Coffin, Ricki Y. Barlow, Lois Tarkanian, Stavros S. Anthony, and Bob Beers voted in favor. (*Id.* at 6); (Admin. Rec. at 1, ECF No. 16-16).

On November 25, 2015, Plaintiff filed its Complaint in this Court, including six causes of action: (1) Petition for Writ of Mandamus, (2) Judicial Review, (3) Equal Protection Violation, (4) Violation of 42 U.S.C. § 1983, (5) Injunctive Relief, and (6) Declaratory Relief. (*See* Compl. ¶¶ 50–89). Plaintiff asserted that the reduction of its gaming machines from fifteen to seven was arbitrary and capricious, and that it was treated differently than other similarly situated establishments. (*Id.* ¶¶ 40–48).

On March 31, 2017, the Court granted in part and denied in part Defendants' motion for summary judgment: dismissing Plaintiff's general equal protection claim, but permitting Plaintiff to proceed with a "class of one" equal protection claim. (Order 11:2–5, ECF No. 50). The Court also permitted Plaintiff's remaining claims for judicial review and writ of mandamus to proceed. (*Id.*). On February 11, 2019, trial began concerning Plaintiff's class of one equal protection claim. The jury ultimately found Defendants liable on that claim, and accordingly awarded Plaintiff damages. (Jury Verdict, ECF No. 167). Thus, the remaining claims in this case are now Plaintiff's claims for a writ of mandamus and judicial review.

## II. LEGAL STANDARD

The Court's role in judicial review is "to determine whether the decision was arbitrary or capricious and was thus an abuse of . . . discretion." *Consol. Municipality of Carson City v. Lepire*, 914 P.2d 631, 633 (1996). Further, the Court's review of a municipal body's decision is limited to "the evidence presented to the agency." *Id.* at 632-33. "NRS 233B.131(2) requires that before a court may consider evidence beyond what was presented . . . there must be a showing that the 'additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency.'" *Id.* at 633. If additional evidence should be considered, "[t]he court 'may then order that the additional evidence . . . be taken before the agency.'" *Id.*

## III. DISCUSSION

Plaintiff's remaining claims in this case seek review of the City Council's decision through two forms: (1) a writ of mandamus; (2) judicial review. Similarly remaining in this case is Plaintiff's request for injunctive relief associated with its claim under 42 U.S.C. § 1983. The Court's below discussion addresses each issue in turn.

### A. Judicial Review

Plaintiff's writ of mandamus and judicial review claims are similar, in that both depend on whether the City Council's decision was arbitrary or capricious, and thus warranting judicial intervention.[2] Moreover, "City boards may not . . . deny an application for no reason at all (arbitrarily) or for an improper reason (discriminatory, e.g.)." *City Council of City of Reno v. Irvine*, 721 P.2d 371, 372 n.4 (1986); *cf. id.* at 372 ("[A]ctions on the part of a city's governing

---

[2] Generally, under Nevada law, a writ of mandamus operates under a different procedural mechanism than judicial review. That is, a petition for writ of mandamus is available to compel an act that the law requires or to control an arbitrary and capricious exercise of discretion; and it is available when no other remedy exists. *See Kay v. Nunez*, 146 P.3d 801, 805 (2006). Further, it is up to the discretion of the court to consider the writ. *Id.* Conversely, judicial review is often the route available when a statutory scheme creates a right of review. *Id.* Neither party here identifies a scheme for Plaintiff to seek review of the City Council's decision; and thus, the Court construes Plaintiff's claims as one for a writ of mandamus.

board may be subject to judicial action to prevent interference with a license applicant's legal or constitutional rights"). "If a municipal governing body decides to deny a license, even of the highly privileged kind . . . in an arbitrary and capricious manner, it has abused its discretion and invited judicial review." *Id.* at 372.

In reviewing a municipal body's decision, "it is not the place of the court to substitute its judgment for that of the [municipal body] as to the weight of the evidence." *Clark Cty. Liquor & Gaming Licensing Bd. v. Simon & Tucker, Inc.*, 787 P.2d 782, 783 (1990). Moreover, even if a record were to show evidence that conflicted with a municipal body's decision, that conflict "does not compel interference" by a court when that decision is supported by substantial evidence in the record. *Id.* "Substantial evidence" is that which "a reasonable mind might accept as adequate to support a conclusion." *Stratosphere Gaming Corp. v. City of Las Vegas*, 96 P.3d 756, 760 (2004) (citations omitted).

The City Council's decision at issue in this case focused on applying Las Vegas Municipal Code ("LVMC") 6.40.020, which allows the City of Las Vegas to award a permanent restricted gaming license for "an operation consistent of, not more than 15 slot machines, incidental to the primary business at the establishment . . . ." According to Plaintiff, the City Council's approval of only seven gaming machines for Dotty's Store #110 pursuant to LVMC 6.40.020 was arbitrary, because it was not supported by substantial evidence to warrant differential treatment of Plaintiff compared to others based on the same standard. (Pl.'s Trial Brief 25:2–7, 27:22–26, ECF No. 120). Specifically, Plaintiff argues that the City Council scrutinized Store #110's license application under a novel interpretation of LVMC 6.40.020— an interpretation focused solely on revenue from gaming. (*See id.* 25:2–7). Plaintiff contends that this novel interpretation stood in contradiction to the City Council's prior focus: the business being a tavern under LVMC 19.12 and 6.50.240; complying with state and city gaming laws on business model under NRS 643.161 and LVMC 6.40.020; and approval by the

Nevada Gaming Control Board and the Nevada Gaming Commission for issuance of a permanent restricted gaming license. (Trial Brief 20:16–19, ECF No. 120).

As support for its argument that it was treated under an arbitrary standard, Plaintiff points to evidence that it allegedly presented to the City Council before its final decision. (*Id.* 26:18–20, 28 n.4). Plaintiff states that this evidence shows how other applicants received permanent restricted gaming licenses for fifteen machines, and that those applicants were similar in relevant respects to Plaintiff. (*Id.* 27:22–26). For example, Plaintiff offers a letter it sent to the City Council on November 17, 2015 (one day before the City's final decision), which included numerous exhibits as attachments, such as: agenda summaries of businesses allegedly similar to Store #110 that applied for a permanent restricted gaming license during Store #110's application period, yet received fifteen gaming machines without abeyance or investigation into gaming revenue; and a presentation by City staff in a separate agenda item, detailing statistics on taverns that received a permanent restricted gaming license even with a high percentage of revenue from gaming (collectively "Exhibits"). (Mot. Supp. 7:3–11, ECF No. 83); (Supp. Mot. 3:11–27, ECF No. 128); (Ex. 3 to Nov. 17, 2015 Letter, ECF No. 84-9) (the City staff's presentation); (Ex. 8 to Nov. 17, 2015 Letter, ECF No. 84-9) (agenda summaries).[3]

Those Exhibits, however, were not included in the administrative record provided to the Court, though the record does contain the letter referencing the Exhibits as attachments. (*See*

---

[3] In Plaintiff's Motion to Supplement, (ECF No. 83), Plaintiff seeks to admit emails between Councilman Beers and a lobbyist, in addition to the Exhibits attached to the November 17, 2015 letter. (Mot. Supp. 8:2–21). To the extent that Plaintiff seeks to supplement the record with the email communication, the Court denies Plaintiff's request. The Court in its role of judicial review can only consider evidence "presented to" the City Council. The Court does not find that these additional documents were presented to the City Council because they were not referenced in City Council hearings nor provided to the City Council and inextricably left out of the record transmitted to the Court. *See Consol. Municipality of Carson City v. Lepire*, 914 P.2d 631, 633 (1996).

Admin. Record at 5–8, ECF No. 16-16). Similarly, it is unclear if the City Council considered those Exhibits provided by Plaintiff when it made its final decision.

Even without the Exhibits as part of the record, the record shows that other applicants for a permanent restricted gaming license were pending before the City Council during or near the time of Plaintiff's application, and that these applicants resembled Plaintiff's business model. (Admin. Rec. at 48, ECF No. 16-13) (discussing on July 1, 2015, a "Molly's" that would be on an upcoming agenda, and an "Oasis Grille" that had "a slightly different model"); (Admin. Rec. at 23, ECF No. 16-4) (Councilman Coffin stating, "just a little while ago, we approved item 36, which was the same thing; a new restricted gaming license for a bar in my Ward, and there was no question raised about that"). However, the City Council did not make findings of fact on how Plaintiff was unique from, or similar to, those applicants in a way that would justify a novel form of scrutiny or result that no other applicant had received. To be clear, Councilman Beers explained in the City Council's November 18, 2015 decision that he requested City staff to reorganize their data to account for food and beverages given away. (Admin. Rec. at 6, ECF No. 16-17). That reorganization apparently revealed a more accurate amount of Plaintiff's revenue from gaming, rather than other business purposes. (*Id.* at 6). Nonetheless, even with the reorganized data, Council Beers recognized at least two other taverns that still appeared to resemble Plaintiff in terms of gaming revenue. (Admin. Rec. at 6, ECF No. 16-17) ("And when the data is sorted in that manner, the top . . . of the list, except for two, is . . . Dotty's"). The record does not state whether those other two businesses received their permanent restricted gaming licenses in the same time period as Plaintiff's application or under the same level of scrutiny. (*See id.*).

Additionally, as support for an updated interpretation of LVMC 6.40.020 for Plaintiff's application, Councilwoman Tarkanian briefly discussed why she now discounted the Council's prior reliance on the Nevada Gaming Control Board's determination for when gaming is

"incidental." (Admin. Rec. at 7, ECF No. 16-17). She stated, "I really don't want to emulate the State in how they put things together." (*Id.*). Councilwoman Tarkanian continued that, "if you talk to anybody . . . I don't think they're going to say 'incidental' is anywhere from 75% to 95% of anything." (*Id.* at 8). Councilman Coffin expressed a similar reasoning stating, "those numbers . . . related to gaming revenue, in plain language, did not look incidental . . . nobody is incidental, in my opinion. Nobody in this whole class." (Admin. Rec. at 22, ECF No. 16-17). However, during that same hearing, Plaintiff's counsel voiced concern that four other taverns received permanent restricted gaming licenses without a discussion on revenue to determine if gaming was "incidental" to their primary business purposes. (Admin. Rec. at 12, ECF No. 16-17). Neither Councilwoman Tarkanian nor Councilman Coffin provided explanations for the differential treatment, other than wanting to establish the limit on this issue. (Admin. Record at 22, ECF No. 16-17); (Admin Record at 8, ECF No. 16-17) (Councilwoman Tarkanian stating, "And its about time that we bit the bullet and did it the right way"). The City Council did not address reasons for that newly established limit for Plaintiff's application when other taverns received a permanent restricted gaming license during Plaintiff's application period—taverns that allegedly resembled Dotty's Store #110. (*See* Admin Record at 47–48, ECF No. 16-13); (Admin. Record at 4, ECF No. 16-15) (stating two other permanent licenses had been granted during Dotty's Store #110 application process).

Because it is uncertain if the City Council considered Plaintiff's Exhibits for which it now seeks to supplement on the record, and because the City Council did not make specific findings on whether Plaintiff's application differed in material respects from others to warrant dissimilar scrutiny under LVMC 6.40.020, the Court cannot properly review the City Council's decision for arbitrary action. In light of this uncertainty, the proper remedy is remand to the City Council. *Cf. Irvine*, 721 P.2d at 373 n.4 (1986); *see Consol. Municipality of Carson City v. Lepire,* 914 P.2d 631, 633 (1996) (applying the procedural standards of NRS 235B.135, and

explaining that the Court "may then order that the additional evidence . . . be taken before the agency"); *Gen. Motors v. Jackson*, 900 P.2d 345, 348 (1995) ("[I]n enacting NRS 233B.135 the legislature intended for the district court to have the power to reverse and remand a decision for a factual determination where there is no evidence on the record to decide the issue."); Nev. Rev. Stat. 233B.135(3)(a). The City Council can then determine, with the ability to reconsider its decision, appropriate application of LVMC 6.40.020 in consideration of Plaintiff's similarities to, or material differences from, other permanent restricted gaming license applicants during Plaintiff's application period.

### B. Injunctive Relief

Addressing now Plaintiff's request for an injunction, Plaintiff contends that it is entitled to a permanent injunction requiring "the City to exercise its discretion with Dotty's #110 as it had with other licensees that came before it in 2015 and grant Dotty's #110 an amended permanent restricted gaming license for the full 15 machines." (Trial Brief 28:15–19, ECF No. 120). As stated in this Order, the Court is remanding this matter to the City Council for reconsideration of its decision. The Court finds that the proper injunctive relief is thus requiring the City Council to consider Plaintiff's application based on standards used with other, similarly situated applicants as Plaintiff, based on those who sought a permanent restricted gaming license during the pendency of Plaintiff's application for its Store #110. Plaintiff has not provided the Court with sufficient authority or support to force the City Council to grant Plaintiff's license for a full fifteen machines, nor has Plaintiff shown the need for such drastic remedy to prevent future violations. *Cf. Tighe v. Von Goerken*, 833 P.2d 1135, 1137 (1992) (vacating a district court's order that the City Council award a permit, but remanding the matter to the City Council for rehearing to fully consider evidence).

///

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Supplement the Record, (ECF No. 83), is **DENIED**.

**IT IS FURTHER ORDERED** that the City Council of Las Vegas's decision to grant Plaintiff's application for a permanent restricted gaming license for only seven gaming machines at its Dotty's Store #110 location is vacated; and this matter is remanded to the City Council of Las Vegas for reconsideration.

The Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this __8__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court